IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | |
|---|---|
| **GWENDOLYN TRIMM,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | )   **Civil Case No.:** |
| | ) |
| **WAL-MART STORES EAST, LP** | ) |
| | ) |
| **Defendant.** | ) |

# COMPLAINT

**COMES NOW** Plaintiff, Ms. Gwendolyn Trimm ("Plaintiff" or "Trimm"), by and through her undersigned counsel of record, and files this Complaint against Wal-Mart Stores East, LP ("Defendant" or "Walmart"). As grounds for this Complaint, Plaintiff states the following:

## JURISDICTION AND VENUE

1. This is a suit authorized and brought to secure the protection of and to redress the deprivation of rights secured by the Americans with Disabilities Act of 1990, as amended, codified at 42 U.S.C. §12101 et seq. (hereinafter referred to as the "ADA").

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2).

3. The unlawful employment practices described herein were committed in Tuscaloosa County, Alabama; therefore, venue lies in the United States District Court for the Northern District of Alabama, Western Division, pursuant to 28 U.S.C. § 1391(b).

## PARTIES

4. Plaintiff is a citizen of the United States of America over the age of nineteen (19) years, and currently resides in Tuscaloosa, Alabama.

5. Plaintiff was, at all times relevant, an "employee" of Defendant within the meaning of 42 U.S.C. § 12111(4).

6. Defendant is a Foreign Limited Partnership, based out of Bentonville, Arkansas, with a principal mailing address of 702 SW 8th St., Bentonville, AR 72716.

7. During all times relevant to this Complaint, Defendant conducted business in Alabama, specifically at the 1501 Skyland Boulevard East, Tuscaloosa, AL 35405 location.

8. Defendant is an "employer" within the meaning of 42 U.S.C. § 12111(5) and was, at all times relevant, Plaintiff's "employer."

## ADMINISTRATIVE EXHAUSTION

9. Plaintiff filed a Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") against Defendant.

10. Charge number 420-2017-02811 (the "Charge") was filed on August 23, 2017. (Attached hereto as **Exhibit A**).

11. The EEOC found reasonable cause to believe violations of the statute occurred.

12. Plaintiff received the Right to Sue ("RTS") for the Charge on or about May 12, 2022. (Attached hereto as **Exhibit B**).

13. Plaintiff has now filed this Complaint within ninety (90) days of her receipt of the RTS and has, therefore, exhausted all administrative remedies with respect to the Charge before filing her claims with this Court.

## FACTS

14. Trimm was initially hired by Defendant on or around March 30, 2017.

15. On or about April 3, 2017, Trimm's training group was allowed to sign into "the wire" to utilize it for training on some of Defendant's policies.

16. After lunch on or about April 3, 2017, Trimm was instructed to go to the floor.

17. While on the floor, Trimm met a co-worker, Mr. Colby Gonzalez ("Gonzalez"), for the first time.

18. Trimm told Gonzalez that she did not know how to use the register, to which he responded, "it's simple," and then walked away.

19. Trimm was not receiving the training she needed; therefore, she terminated her employment with Walmart.

20. In late April 2017, a Walmart representative contacted Trimm to ascertain why she terminated her employment.

21. Trimm informed the Walmart representative that she terminated her employment because she did not receive adequate training.

22. Walmart extended Trimm an offer of employment, which Trimm accepted, provided that Walmart agree to provide her with adequate training.

23. Trimm began employment with Walmart on May 5, 2017.

24. Trimm, however, was not provided with the requested training.

25. While working the floor, Gonzalez would often disappear for long periods of time.

26. Trimm needed and requested Gonzalez's help on multiple occasions.

27. Occasionally, Gonzalez would agree to help, but other times he would just disappear.

28. Trimm continued to seek Gonzalez's help, but instead of helping her, Gonzalez began making rude remarks.

29. Gonzalez's remarks became more threatening.

30. The floor supervisor told Trimm to "let it go" as the employees "needed to all get along".

31. Around the middle of May 2017, Gonzalez's threatening comments began to focus on Trimm's disabilities.

32. Trimm suffers from diabetes, neuropathy, and post-traumatic stress disorder ("PTSD").

33. Trimm was and is substantially limited with respect to one (1) or more major life activities.

34. Trimm was and is qualified to perform the essential job duties expected of her at Walmart.

35. Walmart knew of these conditions as Trimm had discussed them with Walmart managers and supervisors.

36. Gonzalez's threats included, but were not limited to:

   a. "I will make you so sick you will have to quit."

b. "What do you think will happen when you are out there and drink Gatorade?"

37. Trimm, again, complained to her supervisors about Gonzales' discriminatory treatment, but management dismissed her and said that everyone in the garden center needs to help each other.

38. Gonzalez's comments continued, despite Trimm's pleas for help to management.

39. Subsequently, Gonzalez told a co-worker, "you know she [Trimm] is diabetic and that if she gets too hot she will just run her sugar too high and pass out because of it- those diabetics are always so sickly".

40. Trimm, again, sought help from management and was told it would be handled.

41. However, the discriminatory treatment continued.

42. Trimm asked Jeremy if she could be relocated to another department for a short while in order to let things cool down with Gonzalez, as the harassment was still ongoing.

43. Gonzales' treatment was so bad, Trimm even requested a transfer.

44. Trimm's request was ignored despite the fact that Trimm notified Walmart that Gonzalez's treatment was seriously affecting her health, specifically her PTSD and diabetes.

45. Additionally, Gonzalez's treatment caused Plaintiff severe anxiety which spiked Plaintiff's sugar levels, consequently affecting her diabetes.

46. Trimm advised management that she would be forced to take some time off due to the catastrophic effects that Gonzalez's continued harassment had on her health conditions.

47. Trimm was forced to miss some work due to Gonzalez's impact on her health condition.

48. Despite her absences being necessitated by her health condition, Trimm incurred attendance points.

49. A few days later, a numbered, handwritten list entitled "Garden Squad" appeared between the two registers in the garden center.

50. The list was numbered one (1) through nine (9) and included the names of the workers in the garden center. Gonzalez had written himself in as number four (4), and listed Trimm as number eight (8), near the very bottom.

51. Between June 5, 2017, and June 8, 2017, Trimm contacted Defendant's Global Ethics hotline as a last result because local management had repeatedly failed to stop Gonzalez's harassment.

52. Trimm received an e-mail back from Walmart Global Ethics on June 13, 2017.

53. The e-mail referred Trimm to the local market human resources manager, Ms. Latricia Spencer ("Spencer").

54. On June 22, 2017, Trimm contacted the Assistant Manager ("AM") on duty to ask if she could go home to change due to being soaked from the rain.

55. Trimm informed the AM that she has neuropathy caused by being diabetic.

56. Trimm's neuropathy makes it nearly impossible for her to feel certain parts of her feet and her left thigh.

57. Trimm was afraid after being soaked by the rain that the friction from her wet clothing may have been causing sores on her skin in places that she could not feel.

58. Trimm offered to return to finish her shift after changing clothes.

59. The AM told Trimm that she could go home and without occurring any points against her.

60. The AM directed Trimm to contact another manager, Tanga, to let her know to go in and remove the half point that would occur automatically; however, the half point was never removed after speaking with Tanga on June 25, 2017.

61. In or around the last week of June 2017, Trimm was called into the office to speak to Jeremy and to the store manager, Matt Joiner ("Joiner"), about her occurrences.

62. The Policy states that a new hire is an associate who has been employed for six (6) or less months since their most recent hire date.

63. Walmart's Attendance Policy ("Policy") states that, "if a new hire accumulates four (4) or more occurrences in his or her first six (6) months of employment... he or she is subject to termination".

64. Trimm did not learn of this provision of the Policy until she already had three (3) occurrences.

65. At this time, Trimm was marked with 5.5 occurrences.

66. 4.5 of these occurrences were disability-related absences.

67. Trimm explained her absence on June 24, 2017, and they removed the point for the occurrence.

68. Trimm explained the others; however, those points remained.

69. During the meeting, Joiner explained to Trimm that "[Gonzalez] could not be possibly harassing you because he [is] a co-worker on the same level field that you are on, and he has no power over you".

70. Joiner continued by saying that "harassment only occurs when someone has power over someone else, or when someone is in a position of power over another person".

71. Joiner stated the same idea about the threats that Gonzalez was making towards getting Trimm fired, saying that "[Gonzalez] cannot be threatening you, he is not your supervisor. He is your equal."

72. Regardless, Joiner told Trimm that he would investigate whether Gonzalez was harassing her, and that he would get back to her.

73. Plaintiff was fired the next week.

74. When Trimm asked why she was being let go, she was told it was because she had too many occurrences and that she should take it "higher up".

75. Trimm was significantly damaged by Defendant's unlawful conduct.

## COUNT I
## ADA DISABILITY DISCRIMINATION

76. Trimm's PTSD, diabetes, and neuropathy resulting from her diabetes, are qualifying disabilities under the ADA.

77. Due to these impairments, Trimm was and is substantially limited with respect to one (1) or more major life activities.

78. Trimm was and is qualified to perform the essential job duties expected of her at Walmart.

79. Defendant had knowledge of Trimm's disabilities as she had discussed her disabilities and requested accommodations from Walmart managers and supervisors.

80. Trimm repeatedly reported her concerns about Gonzalez to her floor supervisor.

81. Trimm advised management that she would be forced to take some time off due to the catastrophic effects that Gonzalez's continued harassment had on her health conditions.

82. Gonzalez's harassing and discriminatory comments exacerbated Trimm's PTSD symptoms, as well as her diabetes symptoms.

83. When Trimm asked to be moved to another department to remove herself from the situation involving Gonzalez, she was denied.

84. Gonzalez's conduct was so severe and pervasive that it altered the conditions of Plaintiff's employment.

85. Plaintiff had to miss work due to the effects of Gonzalez's harassing conduct.

## COUNT II
## FAILURE TO ACCOMMODATE

86. Trimm's PTSD, diabetes, and neuropathy resulting from her diabetes, are qualifying disabilities under the ADA.

87. Due to these impairments, Trimm was and is substantially limited with respect to one (1) or more major life activities.

88. Trimm was and is qualified to perform the essential job duties expected of her at Walmart.

89. Defendant had knowledge of Trimm's disabilities as she had discussed her disabilities and requested accommodations from Walmart managers and supervisors.

90. The Policy states that, "if a new hire accumulates four (4) or more occurrences in his or her first six (6) months of employment... he or she is subject to termination".

91. Trimm did not learn of this provision of the Policy until she already had three (3) occurrences, two (2) of which were disability related.

92. Walmart knew of Trimm's need for leave as an accommodation; nevertheless, Walmart issued occurrences to Trimm for her time away from work caused by her disabilities.

93. Because Walmart refused to allow Trimm leave as an accommodation, Trimm was subsequently terminated.

94. There is no showing that accommodating Trimm would have been an undue hardship for Walmart.

95. Due to working outside in the heat and humidity, Walmart provides garden center employees with drinks to help keep them hydrated.

96. Trimm asked her supervisor to provide water instead of Gatorade, as Gatorade would affect her blood sugar levels as a diabetic.

97. Trimm's request was denied, and Gatorade continued to be provided to the employees working in the garden center.

98. Defendant violated Trimm's rights under the ADA by failing to reasonably accommodate her disabilities.

## COUNT III
## RETALIATION

99. Trimm engaged in statutorily protected conduct when she made numerous complaints internally, as well as when she requested accommodations for her disabilities.

100. In or around May 2017, Trimm reported Gonzalez's harassing behavior twice to her floor supervisor.

101. After receiving no support or assistance, Trimm reported Gonzalez's harassing behavior twice to the Assistant Manager, Jeremy.

102. Between June 5, 2017, and June 8, 2017, Trimm contacted the Walmart Global Ethics hotline as nothing was being handled internally to help resolve her problem.

103. On or about June 22, 2017, Trimm contacted the AM on duty to ask if she could go home to change her wet clothes as it was affecting her neuropathy.

104. Trimm asked her supervisor to provide water instead of Gatorade to the garden center employees, as Gatorade would affect her blood sugar levels as a diabetic.

105. In retaliation for Trimm engaging in the statutorily protected activities listed above, Defendant subjected Trimm to unlawful employment actions, including, termination.

**WHEREFORE,** Plaintiff respectfully requests this Court grant to Plaintiff the following:

A. Back pay for lost income and any other compensatory damages;

B. Reinstatement or front pay if the Court determines reinstatement is impractical;

C. Liquidated damages equal to the amount of back pay;

D.  Punitive damages;

E.  A reasonable attorneys' fee;

F.  Plaintiff's costs and expenses;

G.  Interest on all monies owed; and

H.  Any and all other relief the Court deems just and appropriate.

Respectfully submitted on this the 10th day of August 2022.

Respectfully submitted,

/s *Anthony D. Michel*
Anthony D. Michel (ASB-6809-064M)
*Attorney for Plaintiff*

**Michel | King**
505 20th Street North, Suite 1650
Birmingham, Alabama 35203
Telephone: (205) 980-5700
Facsimile: (205) 994-2819
Anthony@wmalabamalaw.com

**DEFENDANT WILL BE SERVED VIA CERTIFIED MAIL AT THE FOLLOWING ADDRESS:**

Wal-Mart Stores East, LP
c/o CT Corporation System
2 N. Jackson St., Suite 605
Montgomery, Alabama 36104

/s *Anthony D. Michel*
*Attorney for Plaintiff*

15